Will the attorneys presenting argument please approach and state your names for the record, if you could spell your last names. David Schroeder for Appellant Metropolitan Builders and Cross Appellee. Karen Anderson on behalf of Underwriters. Thank you very much. We're going to try to stick the 15 minutes aside. We can be a little flexible. We would assume that there will be a few minutes for rebuttal will be requested. The microphone is for recording purposes, not amplification. So please speak into the mic, but also please keep your voices up. With that, Mr. Schroeder, I guess you have the floor. David Schroeder for Appellant Metropolitan Builders. I would request three minutes for rebuttal. As I was reviewing the briefs to prepare for today's argument, I realized that this case really boils down to one fundamental issue related to insurance coverage. And that issue is, how is a court to look at the allegations in the underlying complaint to determine whether there's a potential for a duty to defend? I know we've briefed a lot about occurrence and property damage, and actually we don't disagree a whole lot on those issues. I think the law of Illinois is very clear that if you're dealing with a case where the underlying case involves deficient construction, that if that's the only thing that's being alleged in the underlying case, then there isn't an occurrence and there isn't property damage. However, I think we are also in agreement that if there is damage to something else other than the insured's work, then that can potentially be property damage or an occurrence. So does that mean that the cost of all that construction, all those buildings that fell down and have to be built back up, that is not the result of an occurrence? It's not property damage? Correct. The only thing that's alleged in the underlying complaint that's potentially an occurrence and property damage in this case, the allegations that the shiller, who was the owner of the building, suffered damage to personal property and to damage to work that was other than what Metropolitan was doing. But it was still Metropolitan's work, right? It was still within the scope of their project, right? What was? The personal property? No. Oh. The damage to the personal property. So there were three buildings, right? Correct. And a couple of them fell. They all ended up having to be demolished. They weren't supposed to be working on some of it, but it's all their work. It's all their job. They don't have to have been working on it at that moment when it was damaged, right? Well, I think that's where there's A, an ambiguity in what the complaint is alleging, and B, there's kind of this hole in the law after the acuity case where the acuity case said if you're dealing with two different subcontractors, that if one subcontractor damages another subcontractor's work, that can be an occurrence of property damage. But it went on to say that that probably would not be true in the case of a general contractor. Right, which is what brings me to my question. Right, and the question then is what does the underlying complaint mean when it says that the party they allege is the general contractor damaged work that was not its work? Because by definition, the general contractor's work is the whole project, which is why the acuity case said we don't think that this rule would apply. Now, personally, I don't think that's our strongest issue here or, you know, our stronger argument is on the personal property that's alleged. You want to focus on that? Which I would like to focus on, yes. Sure. Okay. So as I said, really the only issue here is the fundamental question of how does the court look at the allegations in the underlying complaint? And the law is crystal clear that the allegations are to be interpreted most liberally in favor of the insured and that if there is any potential for coverage, then their duty to defend is triggered. Now, where we disagree here is how we approach the particular complaint in this case. They focus on paragraph 9 exclusively and say, wait a minute, AIG alleges that they paid $1.8 million for real property repairs, demolition, construction, and other associated expenses. They don't mention personal property in there, so therefore we get to assume that they didn't pay any of the 1.8 for the personal property and therefore no potentially covered property damage, no occurrence. We say that that's an unusually narrow interpretation of the underlying complaint and it also takes the underlying complaint in the light most favorable to them, which is the exact opposite of what a court is supposed to do. You're supposed to look at the complaint in the light most favorable to us. And when you look at this complaint as a whole, it's a subrogation action, where AIG paid $1.8 million for damages that Schiller alleged that occurred due to this collapse. And it alleges multiple times that part of the damage that Schiller suffered was to personal property. And it's also really interesting, if you look at the way this complaint is drafted, that when you get into the later counts, the, for example, count three, the allegation in paragraph 45 is as a result of the aforementioned negligence, Schiller suffered losses including but not limited to damage to Schiller's real and personal property. And then the ad damnum follows right after that. So, again, I think this is really just a basic question of how the court looks at an underlying complaint and determines whether there's a duty to defend. And this is a duty to defend case. It may well turn out that the personal property was, I don't know, a laptop computer worth like $1,000 and that of the $1.8 million, we wouldn't have indemnity coverage for anything but that $1,000. But we're not talking about the duty to indemnify. We're talking about the duty to defend. And you think it's enough just to say personal property without a liberation? I do. Again, because of how broad the duty to defend standard is. If there's any potential for coverage, they have a duty to defend. If there was, in fact, personal property damage here to Schiller's personal property, whatever that was, could have been a laptop computer that they had on site. Maybe they took all the expensive Oriental rugs out of the building and put them in the basement and they were all destroyed when the building collapsed. We don't know. I'm not involved in the underlying case. I have no way of knowing. The only thing I know about the underlying case is it's still ongoing. So that's probably, that's an issue for the underlying case. What are the damages and what is Metropolitan's liability for them? But with respect to the duty to defend, I think it's clear that the allegation of damage to personal property that's repeated over and over in the underlying complaint and the fact that you should look at the complaint as a whole and not just pick the one paragraph that they think is dispositive here. And if you look at the complaint as a whole and apply traditional Illinois law on insurance duty to defend, I think that the trial court was wrong in finding that there was no occurrence here. We have to remember the court did find that there was a potential of covered property damage. And we then argued, we're now arguing on appeal that there isn't a case out there that says if you have potentially covered property damage in a construction defect case, you don't have an occurrence. Because for an occurrence, you don't look at whether the construction defect was expected or intended, but whether the damage that flowed from it. And there's no way that a contractor could anticipate that the client would have some sort of personal property on site that may be damaged by its deficient construction. So for those reasons, unless the Court has any other questions, we would urge the Court to reverse the circuit court on its finding that there wasn't an occurrence in this case and find that, in fact, Boyds does have a duty to defend. Thank you. Thank you. Counsel? May it please the Court? Counsel? Karen Anderson Moran on behalf of underwriters. The award of summary judgment, finding that there is no duty to defend or identify the general contractor, metropolitan builders, should be affirmed. Following longstanding precedent, the circuit court determined that the underlying action did not contain allegations constituting an occurrence. The Court went further. It didn't need to. But it also stated that there were allegations constituting property damage. Excuse me. We state that that was an error and that the award for summary judgment may be affirmed for the additional reason that there are no allegations constituting property damage. Is the word property damage rightful to this complaint? It's the word property damage. Property damage to property. Personal property. Personal property it is. It is throughout the complaint. So let's move on to that particular issue. It states that Schiller sustained damage to its personal property. The key inquiry here is what is AIG seeking recovery for? Schiller is not the plaintiff here. AIG is. AIG issued an insurance policy. And that insurance policy covered the property. And that can be found in Allegation 6. So you're saying that this wasn't any part of the project itself? Anything that happened to the damage has nothing to do whatsoever with the project itself? I'm saying specifically with regard to the personal property damage that's being alleged that Schiller sustained. I'm saying that AIG is not seeking recovery for that damage to Schiller's personal property. The policy didn't cover it. It's not alleged that Schiller made a claim for it. And it's not alleged that AIG paid for it. We have to take the underlying allegations pleaded as true. And I do rest on Allegation 9 where it says that AIG paid for damage to real property, repairs, demolition, construction, and associated expenses arising from the collapse. Personal property is not listed there. In addition. But counsel, does that mean that they haven't also paid for personal property damage or that they will in the future? I mean, I looked at that paragraph as a subrogation paragraph that has to go into any one of these lawsuits, right? Because AIG has to show the court, has to plead why they're here. Who are you? Why are you suing over this? It's not your contract. We'll know. But we are the insurance company. We paid all this money. We now have the right to step in the shoes of the owner. Right? And so that's what that allegation does, right? Yes. Gives them the right to be the subrogate. Subrogate. I get mixed up. It gives them their subrogation rights. But that doesn't necessarily purport to say this is the only thing we paid and this is the sum total of what we paid and these are the things we paid for. I do believe it states that. It doesn't say that we paid 1.9 and we're going to pay more in the future. They brought the underlying action seeking recovery for $1.9 million. And if you look at the 1.8, whatever. In excess of that. In excess of that. And it talks about that in each allegation. I would also suggest if we go back and look at the way those counts are, if you look at count one of the underlying action, that straight allegation relating to Shiller's personal property is not contained in that. And I'll direct the attention of the Court to it's in the record at C608, allegation number 34. AIG. Now we're talking about what AIG did. AIG suffered damages, including property damages and costs associated with repair and replacement by virtue of its payments in excess of $1.8 million. Right. That's the contract count. In that particular count, there's no allegation of damages to Shiller and it's 1.8. If you look at the remaining counts where they also talk about that Shiller sustained damages to its personal property, that number doesn't go up. But it always says in excess of. It does, Your Honor. I will convince you. It does, Your Honor. Yeah. Yeah. So in other words, underwriter's position is we have to take the. I'm sorry to interrupt you, but are you saying that let's say it was really specific and you didn't have this complaint that you have. Let's say it said it damaged our. We had a bunch of computers in that office and they were damaged. Would that be covered? Would that be. Would that turn this into an occurrence? Would that be property damage of the owner that was. If there were. If there was damage to the computers. Yeah. And. All the same facts. All the same facts. We had 10 computers in there. If AIG either paid for those computers, yes. Because that would not be part of the project. Or the other way of looking at this, if the owner of the computers, Schiller, were here and they were also a plaintiff in the underlying action, that would say yes. That there would be a duty to defend here. But because we're saying that this is a straight allegation, very similar to what we see in a lot of these construction defect type cases and condominium association cases. Where they talk about how the individual condominium unit owner sustained damage to its personal property. But that unit owner is not the plaintiff. And the condominium association is not seeking recovery for that. And in that regard, we think that this type of case is analogous. That it's a straight allegation that cannot be used to trigger coverage. Are you saying that if damage was to the, if there was damage to the laptop, to these laptops, these hypothetical laptops, that AIG would not have to cover that for the contractor? That would be determined by the scope of coverage under the AIG's policy. Right? But this policy. Everything's the same. We've got the policy. We don't have AIG's policy. No, Your Honor, we don't. That's not part of the record. Oh, I see. So that's why we need to look at what's alleged. And again, I go back to the record of looking at state-serviced software. Do you compare the allegations of the complaint with the policy language? We do into underwriters' policy. Right? We're determining the scope of coverage under underwriters' policy. With regard to AIG's rights, their policy was not attached to the underlying completing. So we don't have it in terms of taking a look at, you know, what was covered. All we can do is look at what's alleged. And it's alleged that their policy covered the property P, the capital P, 907-909-911 Schiller. It says that the claim that was submitted by Schiller was pursuant to the terms of that policy. So, please. I'm sorry. I just want to be clear. It's your position that because AIG is not alleged to have paid for any personal property, we cannot now read the complaint before us as including any claim or any right to defend for the loss of any personal property. Is that correct? I would say it's because of the payment, but also because of what's alleged with regard to the scope of the coverage under AIG's policy and the claim that Schiller submitted, taking all three of those facts together. Yes, sir. And you think that would be a liberal reading of this complaint? I think we have to look at the allegations pleaded as true. And we can't come up with imaginary facts that aren't pleaded. So, we should assume from this that had there been personal property damage like black dumps, that AIG's policy would not have covered it? I'm not saying we have to assume it. I say we need to look at allegation number six. AIG issued a policy providing coverage for loss of and damages to the property with a capital P, 907-1909-1911. And AIG is the one who drafted this complaint. Sure, but they didn't tell us everything in that complaint, right? I mean, we would have to reach the conclusion that, you know, when we're reviewing these, the courts say we're supposed to see, we're supposed to review this liberally and deny coverage under defense, duty to defend, only if it is clear that there's no potential for coverage. So, for us to agree with you, wouldn't we have to run a little roughshod over that principle? Wouldn't we have to say, well, AIG never said that their policy includes personal property damage to the property owner? And, therefore, there's no potential that this property damage could be covered. That just seems to be less than a liberal view. Yeah, I hear what you're saying, Justice. My suggestion, again, would be to take a look at these allegations of AIG, of an insurance company, who authored this. They have their policy in front of them. They know that the claim was submitted, and they know what they paid for. And those allegations are set forth here. And they do say that Shiller sustained damage to its personal property, but they don't say that they paid for that damage. I think it's telling and a solution. Well, what does that, again, going back to one of Justice Ellison's questions, what does in excess mean, that they paid damages in excess of? I'm not sure if they're talking about interest or some other potential component there. I don't know. We don't have an itemization other than what's included in the complaint. I mean, isn't it possible that they're still paying off things? I mean, I don't know anything about this. Probably you don't either, right? We just have a cold complaint. But, you know, there was this big accident. This big thing happened. Crash, bang, the city comes in, demolishes it. During all this, I'm sure that one of the first phone calls the owner made was to AIG. I need your help. You know, I don't know how these things process. Maybe they paid some things, but not all. Maybe they aren't done paying. I would assume in this instance that they are done paying because that's what they brought the lawsuit for, and that's what they're seeking damages for. I think if this was just going to continue to go on, that they would not have brought their underlying allegation at this time. I don't have anything further. Just to conclude, Metropolitan is asking this court to ignore 20 years of precedent in Wilfrid's, Stonebridge, most recently 950, 950 West Huron, which, again, the Supreme Court did not take up for review in September of just this year. This is a general contractor. And if you find coverage here, you are essentially taking a liability policy and changing that into a performance bond and guaranteeing the worth of the general contractor, Metropolitan Buildings. Thank you. Thank you very much. Counsel? Just a few quick points in response to the argument that counsel made. First of all — How about 20 years of precedent that she ended up? Well, I think the 20 years of precedent is clear, that if there are no allegations of damage to something other than the insured's work, it's not covered. But this complaint is loaded with allegations of damage to personal property. Now, it was interesting listening to her argument because she was required to make certain assumptions of, well, you know, I mean, the AIG policy only covered the real property. It didn't cover personal property. And all of the things that she talked about where there was some — even a scintilla of doubt has to be resolved in my favor. Because without that policy — and quite frankly, I think that the assumption with respect to the policy would be flipped. I mean, who buys a property policy and doesn't have contents coverage? I mean, that would be my assumption, is that AIG did cover the building and its contents, but we don't have the policy. But all of those assumptions have to go in my favor. Well, is that a problem, that we don't have the policy? It's not a problem for me because it creates a question of — it raises a possibility that AIG paid for the personal property that they alleged. And I wanted to go back to their reply brief, their final brief that they got to file in this case. And they make the point that the question of coverage should not hinge exclusively on the draftsmanship skills or whims of the plaintiff's counsel. And I think on the best case they have here is this underlying complaint is maybe not the greatest draftsmanship here. But what the court in Western Casualty actually said is the complaint need not allege or use language affirmatively bringing the claims within the scope of the policy, as the question of coverage should not hinge exclusively on the draftsmanship skills or whims of the plaintiff. So in other words, that test of looking at poor draftsmanship goes in my favor. The insured can take advantage of the fact that the underlying complaint is poorly drafted and at least raises the potential for coverage, but an insurer can't. And that's maybe the case we have here, although I would also point out they rely on this paragraph 9 almost exclusively. And what are the other expenses? That's the final thing that's in that clause. We paid for real property and this, that, and the other thing. And the final thing they say is other expenses. Well, what are those? And what are the damages in excess of the $1.8 million? These are all open questions that, again, would indicate that there's definitely a duty to defend here because we don't know the answers to those questions. They have to be resolved in the underlying case when we finally determine whether there's going to be a duty to indemnify or not. And for those reasons, again, we urge the Court to reverse the circuit court's decision finding that there was no duty to defend here. Thank you. Thank you, both of you. You did a very good job, as you did in your briefs. We'll take the matter under advisement and we will stand adjourned.